MARIO A. MOYA (State Bar No. 262059)
REBECCA M. HOBERG (State Bar No. 224086)
MOYA LAW FIRM
1300 Clay Street, Suite 600
Oakland, California 94612
Tel: 510.926.6521
Fax: 510.340.9055
Email: mmoya@moyalawfirm.com
      rhoberg@moyalawfirm.com

Attorneys for Plaintiff
MULTIFLORA INTERNATIONAL LTD.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MULTIFLORA INTERNATIONAL LTD., a British Virgin Islands company limited by shares,<br><br>        Plaintiff,<br><br>        v.<br><br>CABAN SYSTEMS, INC., a Delaware corporation; GAIA INVESTMENT HOLDINGS CORP., a Panamanian corporation; ALEXANDRA RASCH, an individual; JACQUELINE RASCH, an individual; NADINE RASCH, an individual; CHRISTIAN RASCH, an individual; and DOES 1–20, inclusive,<br><br>        Defendants. | Case No.: 4-24-cv-04455-YGR<br><br>FIRST AMENDED COMPLAINT FOR:<br><br>(1) BREACH OF FIDUCIARY DUTY<br>(2) AIDING AND ABETTING BREACH OF FIDUCIARY DUTY<br>(3) CONVERSION<br>(4) CIVIL CONSPIRACY<br>(5) FRAUDULENT TRANSFER - ACTUAL INTENT<br>(6) RESCISSION<br>(7) CLAIM AND DELIVERY/ REPLEVIN<br>(8) CONSTRUCTIVE TRUST<br>(9) TORTIOUS INTERFERENCE WITH CONTRACT<br>(10) DECLARATORY RELIEF<br><br>JURY TRIAL DEMANDED |

Plaintiffs MULTIFLORA INTERNATIONAL LTD. ("Plaintiff" or "Multiflora") hereby files this First Amended Complaint ("FAC")[1] against Defendants CABAN SYSTEMS, INC.; GAIA INVESTMENT HOLDINGS CORP.; ALEXANDRA RASCH; JACQUELINE RASCH; NADINE RASCH; CHRISTIAN RASCH; and DOES 1-20 (collectively "Defendants") for breach of fiduciary duty, conversion, and related claims.

## INTRODUCTION

1.      Plaintiff Multiflora brings this action to seek redress for the theft, concealment, and fraudulent transfer of 855,511 shares of Series A preferred stock it owned in defendant Caban Systems, a Burlingame renewable energy company.  These shares were wrongfully taken from Multiflora by defendant Christian Rasch, a former corporate director and his daughters, one of whom, Alexandra Rasch, is the CEO of Caban Systems.  After being removed as a director of Multiflora in 2020, the former director, Christian Rasch, who served as a director of Multiflora for over 25 years, stole company books and records and took action to fraudulently transfer Multiflora's assets to other entities and persons under his control and/or influence.  The shares owned by Multiflora that are at issue in this lawsuit were eventually transferred to a Panamanian company, Gaia Investment Holdings, at a time when Caban's CEO, Alexandra Rasch, was also serving as the president of Gaia, along with her two sisters, who were Gaia's secretary and treasurer.  By this action, Multiflora seeks recovery and compensation for the property wrongfully taken from it, including a demand that Defendants disgorge all ill-gotten gains from their conspiracy and acts of misappropriation.

## PARTIES

2.      Plaintiff MULTIFLORA INTERNATIONAL LTD. is a British Virgin Islands (BVI) company limited by shares with its principal place of business in Guatemala City, Guatemala.

3.      Defendant CABAN SYSTEMS, INC. ("Caban Systems" or "Caban") is a Delaware corporation with its principal place of business at 858 Stanton Road in Burlingame, California.  Upon information and belief, Caban Systems is a renewable energy services

---

[1] The only substantive amendments made by this FAC are at ¶¶ 40 and 41, *infra*.

company founded in 2018; the company focuses on providing energy storage and management solutions for critical infrastructure, particularly in the telecommunications industry.

4.    Defendant GAIA INVESTMENT HOLDINGS CORP. is a Panamanian corporation with an unknown principal place of business.

5.    Upon information and belief, Defendant ALEXANDRA RASCH is currently a resident of Miami, Florida.[2]   At all relevant times alleged herein, she was the CEO and founder of defendant Caban Systems and, upon information and belief, was a resident of either San Francisco, California or Pacifica, California.  On Aug. 27, 2020, she was also appointed as Director and President of defendant Gaia Investment Holdings.

6.    Upon information and belief, Defendant JACQUELINE RASCH is currently a resident of Miami, Florida.  Upon information and belief, at all relevant times alleged herein, she was a resident of Santa Clara, California.  On Aug. 27, 2020, she was appointed as Director and Secretary of defendant Gaia Investment Holdings.

7.    Upon information and belief, Defendant NADINE RASCH is a resident of Guatemala City, Guatemala.  On Aug. 27, 2020, she was appointed as Director and Treasurer of defendant Gaia Investment Holdings.

8.    Defendant CHRISTIAN RASCH is a resident of Guatemala City, Guatemala. Defendant Christian Rasch is a former director of Multiflora who remains a part-owner of the company.  He is the father to defendants Alexandra, Jacqueline and Nadine Rasch.  Upon information and belief, he also is believed to have a beneficial interest in defendant Gaia Investment Holdings.  The Eastern Caribbean Supreme Court, High Court of Justice has already determined that his authority to act on behalf of Multiflora had been terminated at the time of a fraudulently executed Power of Attorney dated Aug. 28, 2020 that was used as a basis to execute a fraudulent transfer of Multiflora's assets to Gaia Investment Holdings.  Because that issue has already been finally adjudicated in the Eastern Caribbean Supreme Court, High Court of Justice, and because Christian cannot profit or benefit from his own misconduct, Plaintiff alleges that

---

[2] As is customary in Latin America, each of the individual defendants named herein use two surnames — here, "Rasch Castillo" — but for simplicity, they are referred to by only the first name "Rasch," which is how it commonly appears on pertinent email correspondence.

Christian Rasch is not a necessary or required party to be sued in this action, but he is nevertheless sued in an abundance of caution.

9.       Plaintiff is unaware of the true names and capacities, whether individual, entity, or otherwise, of the Defendants sued herein as DOES 1 to 20, inclusive, and therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes, and thereon allege, that each of these fictitiously named Defendants is in some manner responsible for the injuries and damages to Plaintiff alleged in this complaint, either through the Defendants' own conduct or through the conduct of its agents or employees, or in some manner, and that Plaintiff's injuries alleged herein were proximately caused by each of the Defendants. All references in this complaint to "Defendant" or "Defendants" include all Defendants sued herein as DOES. Plaintiff will move for leave to amend this complaint, if necessary, to state the true names, capacities and liabilities of the DOE Defendants after they are ascertained.

<u>Agents, Co-Conspirators, Aiders & Abettors</u>

10.       At all times relevant to this Complaint, Defendants, including the fictitiously-named Defendants, and each of them, were acting as each other's agents, and were acting within the course and scope of their agency with the full knowledge, consent, permission, authorization and ratification, either express or implied, of each of the other Defendants in performing the acts alleged in this Complaint.

11.       As members of the conspiracy alleged herein, each of the Defendants knowingly and willingly participated and acted with or in furtherance of said conspiracy, or aided or assisted in carrying out the purposes of the conspiracy, and have performed acts and made statements in furtherance of the conspiracy and other violations of law.

12.       Each of the Defendants acted both individually and in alignment with other Defendants with full knowledge of their respective wrongful conduct.  As such, the Defendants conspired together, building upon each other's wrongdoing, in order to accomplish the acts outlined in this complaint.

13.       Defendants are sued herein individually and as principals, participants, and aiders and abettors in the wrongful conduct complained of and the liability of each arises from the fact that each has engaged in all or part of the improper acts, plans, conspiracies, or transactions

complained of herein.  The acts alleged to have been done by Defendants were authorized, ordered or done by them and their agents or representatives while actively engaged in the management of each of the Defendants' affairs.

14.     For the avoidance of doubt, at all relevant times alleged in this complaint, upon information and belief, Defendants and DOES 1-20 were acting as co-conspirators as part of an express conspiracy and were each acting in concert with one another as part of a common plan and scheme to hurt and injure Plaintiff, each with the express approval and encouragement of one another.  Likewise, at all relevant times alleged in this complaint, upon information and belief, Defendants and DOES 1-20 knowingly and intentionally aided and abetted each other in their unlawful objectives, purposefully participated in the other's unlawful activity toward Plaintiff, and sought by their actions to make their unlawful and injurious efforts successful.

## JURISDICTION AND VENUE

15.     This court has subject matter jurisdiction of the claims asserted herein pursuant to 28 U.S.C. §1332(a)(1), as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

16.     Venue in this District is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the complaint occurred in this District.  Moreover, assignment to the San Francisco or Oakland Division is appropriate under Civil Local Rule 3-2(d) because a substantial part of the events giving rise to the claims occurred in the City of Burlingame, San Mateo County, California, where defendant Caban Systems, Inc. maintains its principal place of business.

## FACTUAL ALLEGATIONS

### A.     History of Multiflora & Its Control By Christian Rasch.

17.     Plaintiff Multiflora International is a British Virgin Islands company that is owned in equal shares by three brothers, Allan Rasch, Olaf Rasch, and Christian Rasch.  (For convenience, each of the Rasch brothers are referred to herein by their first name.)  The company focuses on the production and export of agricultural products.

18.     For years, Multiflora was managed by Christian — the eldest Rasch brother — who had management control of the company and its day-to-day operations.  During this time, Christian also had complete control over Multiflora's subsidiaries and its legal representatives, who obeyed his directives and sent information solely to him.

19.     In early 2020, the COVID-19 pandemic began to cause significant disruptions to business and economic activity worldwide.  By March 2020, the Republic of Guatemala began instituting travel restrictions and curfews to prevent the spread of the pathogen.  This had an immediate effect on most existing businesses and their operations, including several businesses owned by the Rasch brothers and other family members.  In anticipation of pandemic-related shutdowns, Allan and Olaf, the non-managing shareholders of Multiflora, asked Christian — over a series of in-person meetings held in Guatemala along with their other family members (including one of Christian's daughters, defendant Nadine Rasch, a local businesswoman) — to conduct an accounting of the company's business, its current assets and economic condition, and his management activities over the years.  At the time, Allan and Olaf expressed to Christian and their other family members (including Nadine) that they did not have a fair picture of Multiflora's activities and its economic condition and would like to know more information about the company and the value of their holdings.  Upon information and belief, Nadine and Christian communicated the substance of this new scrutiny on Christian's stewardship to Christian's other children, Alexandra and Jacqueline, who are also Nadine's sisters.

20.     The following month, in April 2020, Christian entered the Rasch family office and, without authorization, took information, documents, account books, corporate books, and other data relating to Multiflora and its companies.  Initially, Allan and Olaf had been under the impression that Christian had taken the materials to prepare the audit that he agreed to provide, but that impression quickly dissipated as time passed with little update from Christian.

21.     Ultimately, in May 2020, after learning about an unrelated transfer of real estate involving a separate company, a Multiflora subsidiary, and QB Inversiones, S.A., a company owned and controlled by Christian and his wife, Allan and Olaf began requesting the production of financial information and additional documents concerning Multiflora's operations, the operations of its subsidiaries, and Christian's administration of these entities.  These requests

were refused, which prompted Allan and Olaf to begin investigating the title of ownership on known assets of the company, the results of which were made available to them later in May 2020.

22. The results of that investigation revealed that months before, in October 2019, Christian had caused the legal representatives of one of Multiflora´s subsidiary company, Agrícola Esperanza Jacobi, S.A., to sell its only asset — a valuable parcel of real estate — to QB Inversiones, S.A., which was solely controlled by Christian, but without any apparent exchange of consideration reflected in the publicly-available transfer materials. It also revealed that in March 2020, Christian had caused the representatives of another subsidiary company, Agrícola Industrial Entre Ríos, S.A., to appoint a sole administrator who, in turn, sold nine of the company's agricultural properties to a company controlled by Christian called J Dos, S.A. in May 2020, but without any evidence of payment for the transfer.

23. Upon discovering evidence of what appeared to be Christian's self-dealing with Multiflora's subsidiaries and his obstruction of their investigation, Allan and Olaf took immediate action to remove Christian as a director, revoke his full power of attorney over the company, and gain control of the company to determine what business had been occurring without their knowledge. Based on their initial findings, Allan and Olaf caused Multiflora and its affected subsidiaries to initiate various legal proceedings in Guatemala against several persons involved in these transactions. These included several criminal complaints, including two complaints initiated against Christian himself, personally, on July 10, 2020 and Aug. 4, 2020, relating to the then-known transfers of real property referenced above.

24. On May 18, 2020, Multiflora revoked all powers of attorney held by Christian, and he was removed as a director of the company, a position that he had held since October 1994. Multiflora and its new leadership also took action to remove Christian's signature authority from the company's bank accounts and retained new administrators for the company. They encountered immediate resistance to their requests for information. After Christian's removal as director, persons loyal to Christian refused to cooperate with the new administrators' requests for information regarding Christian's actions, and Christian opposed removal and revocation of his authority. It took months for Multiflora's new leadership to access several of

the company's bank accounts, including a key account held at Morgan Stanley, which they could not access until late Sept. 2020.

**B.** **In Oct. 2020, Allan and Olaf Learned That Multiflora Had Exchanged Large Wire Transfers to Caban Systems, an Early-Stage Start-Up Company Affiliated With Christian's Daughter, Alexandra, For Unknown Reasons.**

25.     It was not until late September 2020 when Allan and Olaf finally gained access to the company's Morgan Stanley account and were able to start to order historical bank statements. While reviewing these historical statements of account, Allan and Olaf learned in October 2020 that Multiflora had made certain wire transfers in 2018 and 2019 between accounts owned by Multiflora and defendant Caban Systems, Inc., a Burlingame-based company founded by, and affiliated with, Christian's daughter, defendant Alexandra Rasch.  The first transfer from Multiflora to Caban was for $250,000 in April 2018, followed by a transfer of an additional $100,000 in February 2019.  Just a few months later, in May 2019, Multiflora received an inbound transfer of $101,750 back from Caban.  These transfers all had occurred while Multiflora was under the control and domination of Christian and while Alexandra Rasch served as the Chief Executive Officer and Secretary of Caban Systems.  Upon information and belief, Ms. Rasch was living in the San Francisco Bay Area at the time of these transfers.

26.     Around this same time, in October 2020, Allan and Olaf also learned from a bank in Texas that Christian had executed and transmitted a fraudulent power of attorney on Aug. 28, 2020 that falsely stated that he had authority to transact on behalf of Multiflora.  Upon learning of this, they took immediate action to correct the bank's records and inform them that Christian had no authority to transact on behalf of Multiflora.

27.     At the time of this discovery — which was after Christian's removal as director of Multiflora — there was no documentation or other information available to Allan, Olaf, or Multiflora's new administrators to explain the purpose of the transfers they had discovered between Multiflora and Caban Systems.  The records indicated that Christian — without the knowledge of Allan or Olaf — had caused net transfers totaling almost $250,000 (excluding interest) to be transferred from a Multiflora account at Morgan Stanley to Caban Systems, presumably for investment in the start-up company, but without any evidence or documentation

available to the new stewards of Multiflora to confirm the investment. Accordingly, the following month, Allan and Olaf began evaluating their options to pursue discovery in the United States to determine more about the issuance or purchase of these shares, their share certificates, and any related documentation. Because Caban Systems was located in the United States, beyond the Guatemalan courts' jurisdiction, Multiflora and its other affected subsidiaries (Entre Rios and Esperanza Jacobi) initiated a special proceeding in this Court, pursuant to 28 U.S.C. § 1782, on Nov. 3, 2020 to apply for an order authorizing a subpoena duces tecum to Caban Systems — a third party with no interest in the Guatemalan proceedings — to produce evidence for the applicants' use in those proceedings. Specifically, the application requested permission to issue a proposed subpoena requesting documents concerning Caban Systems, its ownership, its relationship to Christian, and any transactions between Caban and persons and entities controlled by or affiliated with Christian, including Multiflora. *See* Dkt. Nos. 1 in Case No. 4:20-mc-80193-DMR (N.D.Cal.).

28. Approximately one month later, on December 16, 2020, counsel for Caban Systems and counsel the applicants, to conserve resources, stipulated to stay the Court's action on the application pending the parties' agreement that Caban would voluntarily produce documents to Multiflora and request the Court's assistance if necessary. *See* Dkt. Nos. 4-5 in Case No. 4:20-mc-80193-DMR (N.D.Cal.). After further discussions, the parties' stipulated on Jan. 29, 2021 that Caban Systems would produce the requested materials by Feb. 12, 2021, which agreement was confirmed by order of the Court. *See* Dkt. Nos. 10-11.

29. Despite this stipulation and Caban's assurances that the requested documents would be forthcoming, Caban slow-walked its disclosure. It was not until mid-February 2021 when Caban finally produced just six (6) documents totaling 29 pages. One document produced indicated that the smaller $100,000 transfer from Multiflora to Caban was part of a written loan agreement (and which loan appeared to have been repaid by Caban shortly thereafter). Another document, however, showed that the larger wire transfer of $250,000 from Multiflora to Caban Systems in April 2018 was intended as an investment in that company in exchange for 855,511 shares of Series A Preferred Stock. That document showed that shares of Caban Systems had indeed been issued to Multiflora, but the shares appear to have been later canceled and reissued

to a previously-unknown entity, defendant Gaia Investment Holdings Corp., in Sept 2020. *See* **Exhibit A**, attached hereto. While these materials stated that Gaia was an "affiliated entity" of Multiflora, Allan and Olaf did not know of the company or whether Multiflora had executed other agreements with it that would explain the nature of the cancellation and reissuance. Caban also did not produce sufficient documents or information to identify the address or contact information for Gaia or anyone else who could be in possession of the transferred shares.

30. Caban's disclosure provided little detail on what had occurred. The documents did not disclose the terms of those transactions or means by which they occurred. Caban also failed to produce documents or information sufficient to show the actual transfer of funds from Multiflora to Caban or any subsequent transfers between Multiflora and Gaia. The production included just two documents concerning Multiflora's request for financial information from Caban, but those documents did not disclose any documents evidencing that Caban had actually received the $263,938.36 that constituted the purported consideration for the issuance of the shares to Multiflora. They also did not indicate whether Gaia had paid for any subsequent transfer of shares, much less whether the shares were actually "transferred" to Gaia as opposed to being reissued by Caban.

31. Upon reviewing this production, Multiflora and the other applicants determined that Caban's production of documents was insufficient, and it notified Caban of the insufficiency. In the interim, the applicants further investigated Gaia Holdings and discovered from public corporate filings in Panama that Caban's principal, defendant Alexandra Rasch Castillo, was the President and Director of Gaia, and that her sisters, defendants Jacqueline Rasch Castillo and Nadine Rasch Castillo, were the respective Secretary and Treasurer of Gaia. *See* **Exhibit B**, attached hereto.

32. At the time of this discovery, Multiflora and its new leadership — who were without access to the company's documents and full financial records — had no ability to know if the transfers between Multiflora and Caban and, later, Caban to Gaia, were supported by an exchange of consideration or supported by a legitimate business reason for the apparent investment. At the time, Caban was a small start-up company focused on "offering a best in class energy storage platform for the telecommunication infrastructure industry," "[s]erving

some of the largest tower companies in Latin America" and, just years before, had received a $1.9M grant from the California Energy Commission to expand production of energy systems at the its headquarters in Burlingame to meet growing customer demand in the state. The company had also issued a press release announcing in Feb. 2021 that its Enduro System, Caban's signature lithium-ion energy storage battery, would support the deployment of reliable internet connectivity for El Salvador's Greater Coastal Communities. If, indeed, the original purchase of shares by Multiflora was a legitimate investment, then the new administrators of Multiflora had little knowledge of what investor presentations or due diligence materials Christian had relied upon in making what appeared to be a $250K+ investment in his daughter's company, much less what consideration was paid by Gaia to Multiflora for what appeared to be a cancellation, transfer, and/or reissuance of the originally-issued shares.

33.    When Caban failed to object to the Section 1782 application by the deadline set forth in the parties' stipulation, Multiflora requested, on March 9, 2021, that the Court rule upon its *ex parte* application to conduct foreign discovery. In that filing, the Applicants informed the Court that the applicants had previously been told that Gaia was not a company under the control of Christian or his affiliates and that they had relied upon this representation in agreeing to the terms of the original stipulation for an exchange of information. The Court ultimately granted the request by order dated June 29, 2021. *See* Dkt. 13 in Case No. 4:20-mc-80193-DMR (N.D.Cal.). The Court's order authorized the subpoena to be issued to Caban Systems and ordered that Caban fully comply with the subpoena within 14 days of service. *Id*.

**C.    While Multiflora's Ex Parte Application Was Pending, Christian Initiated Proceedings in the BVI to Try to Take Back Control of Multiflora.**

34.    Days after Multiflora provided this Court with notice on March 9, 2021 that it intended to pursue its original *ex parte* application — but before the Court's ruling on the application — Christian took action in the British Virgin Islands to attempt to wrest control of the company from its new leadership. On March 17, 2021, Christian filed an Ex-Parte Notice of Application for Injunction and Freezing Order in the Eastern Caribbean Supreme Court of the British Virgin Islands (the "BVI Proceeding"). The filing sought to: (1) enjoin Applicant Multiflora and Non-Parties Olaf and Allan Rasch from "moving" any of Multiflora's assets up to

$10 million; (2) enjoin Applicant Multiflora and Non-Parties Olaf and Allan Rasch from "disposing or dealing" with the proceeds of several Allegiance Bank of Texas, Bank of America, and Morgan Stanley accounts; and (3) freeze Multiflora's assets.

35.     Weeks later, on May 28, 2021, Multiflora filed a counterclaim in the BVI Proceeding to request an order: (1) to enjoin Christian Rasch from holding himself out as director of Multiflora; (2) requiring him to disclose accounting records pertaining to Multiflora; and (3) requiring him to disclose all transactions entered into on Multiflora's behalf.

36.     Meanwhile, on July 14, 2021, in response to one of the private criminal complaints initiated in Guatemala, the Guatemalan court arraigned Christian, placed an embargo on his accounts, and ordered that he could not leave the country because "sufficient elements exist to believe there was a commission of unlawful acts."

37.     During this time, Multiflora's *ex parte* application under 28 U.S.C. § 1782 for a subpoena to Caban Systems remaining pending before Northern District of California, and the new stewards of Multiflora, including Allan and Olaf, did not know, and had no ability to know, if the transfer of Multiflora's shares to Gaia Investment Holdings was supported by an exchange of consideration, or if payment for the shares had been made to a different Multiflora account or perhaps another affiliated entity that had yet to be discovered.  Put differently, until more information was discovered about these transactions, there was no way to know if Multiflora had actually suffered injury as a result of the transaction or if it still maintained its ownership interests in Caban Systems (even if now thru Gaia because transfer of shares from Multiflora to Gaia recorded a reason of the transfer as a transfer to an "affiliated" entity).

**D.      On July 30, 2021, Caban Produced Documents Disclosing that Christian Had Breached Duties of Care and Loyalty By Transferring Multiflora's Series A Shares in Caban For No Consideration.**

38.     On July 30, 2021, Caban Systems produced documents in response to the subpoena duces tecum that was served following the Court's order granting Plaintiff's section 1782 application.  The documents disclosed included a Stock Transfer Agreement, effective Aug. 31, 2020, between Multiflora and Gaia Investments Holding Co. relating to the transfer of the 855,511 Shares of Series A Preferred Stock in Caban.  The document was signed by

Christian Rasch, on behalf of Multiflora, and by defendant Jacqueline Rasch, as secretary of Gaia Investment Holdings. *See* **Exhibit C**, attached hereto. The document — which was prepared by Caban's counsel in Palo Alto — stated that Multiflora desired to transfer the Caban shares to Gaia Investment Holdings "without consideration" and did so transfer the shares pursuant to the agreement, even though Christian's authority to act or transact on behalf of Multiflora had been revoked at that point in time.

39. Other documents disclosed by Caban at this time also showed correspondence between Defendant Alexandra Rasch and Caban's counsel in Sept. 2020 exchanging the draft Stock Transfer Agreement and coordinating the parties' signatures to the document. *See* **Exhibit D**, attached hereto. According to these documents, Alexandra sent the document to her father Christian (from: arasch@cabansystems.com, to: crasch@cabansystems.com) to be signed on Sept. 13, 2020, with the message (translated from Spanish): "Hello dad, This is the transfer of shares, can you sign on your end for Multiflora?" *Id*. (email dated Sept. 13, 2020 at 12:05 PM). The following day, Sept. 14, 2020, Christian appears to have forwarded the signed document to Alexandra from his account "crasch@jacobifruits.com" with the subject line "FW: Multiflora - Gaia." See **Exhibit E**, attached hereto. Upon information and belief, and according to documents produced by Caban, the shares were finally transferred to Gaia on Sept. 18, 2020 via the company's share management platform and noted that the transaction was a "transfer to affiliated entity."

40. The disclosure of the Stock Purchase Agreement made by Caban Systems to Multiflora and the other applicants on July 30, 2021 was the first time that the company was informed that that there was no consideration for the transfer of shares from Multiflora to defendant Gaia Investment Holding Co. The document also disclosed that defendant Jacqueline Rasch, Christian's daughter, had signed the SPA on behalf of Gaia, which was further evidence that Gaia was not "unrelated" to Christian and his daughters. This was contrary to the representations made by Caban's counsel in the section 1782 proceeding, which was cited in the court's prior order granting the 1782 application. *See* Dkt. 13 at pp. 3 in Case No. 4:20-mc-80193-DMR (N.D. Cal.) (recitation of facts noting that "Caban [had] assured Applicants

[including Multiflora] that the recipient of the Caban shares was unrelated to Christian Rasch or his family").

## DISCOVERY & TOLLING

41.     Until July 30, 2021, Plaintiff did not discover, and a reasonable and diligent investigation would not have disclosed, that the cancellation and/or transfer of Multiflora's shares to Gaia Investment Holdings Corp. was not supported by an adequate exchange of consideration to Multiflora.  Because of Christian Rasch's efforts to conceal his past conduct through his misappropriation of company books and records, the harm to Multiflora was not readily apparent, and Multiflora did not have notice of material facts to know if it could make a colorable basis to sue for damage to the company.  In this regard, under these facts and aggravated circumstances, especially Christian Rasch's theft of company books and records and other efforts to stonewall and conceal his misconduct, the harm to the Multiflora was inherently unknowable until it was confirmed on July 30, 2021 that there was no consideration exchanged between Multiflora and Gaia Investments Holding Co. with respect to the transfer of Multiflora's shares in Caban Systems.

42.     Since this discovery, Plaintiff has diligently litigated its rights and legal remedies — unrelated to recovery of the Caban Shares — against Christian Rasch in other foreign tribunals, including the BVI Proceeding.  In the BVI Proceeding, Multiflora has attempted to unwind all unauthorized corporate actions taken by Christian Rasch after his effective removal from the company.  These efforts have proved fruitful.  Recently, the Eastern Caribbean Supreme Court, High Court of Justice issued a dispositive order granting summary judgment in favor of Multiflora and declaring that an Aug. 28, 2020 general power of attorney written in favor of Christian and a related shareholder resolution were "false, null, and void pursuant to sections 81, 82, 129, and 246 of the Business Companies Act, 2004, and the inherent jurisdiction of the Court."  See **Exhibit F**, attached hereto.

43.     Under principles of equitable tolling, the statute of limitations for all causes of action asserted in this complaint related to Multiflora's loss of its investment in Caban Systems did not begin to accrue until July 30, 2021, which is when Multiflora finally learned that there was no exchange of consideration for the transfer of the shares it owned in Caban Systems to

Gaia Investment Holdings, or, alternatively, did not begin to accrue until May 9, 2024, which is when the BVI High Court finally adjudicated that Christian's Aug. 28, 2020 power of attorney over Multiflora was false, null, and void, which invalidates his later transfer of shares to Gaia.

**<u>FIRST CAUSE OF ACTION</u>**
**BREACH OF FIDUCIARY DUTY**
**(*Against Defendants Christian Rasch, Alexandra Rasch and Caban Systems*)**

44.     Plaintiff re-alleges and incorporates by reference the allegations contained in this complaint as though fully set forth herein and incorporates them as though fully set forth herein.

45.     As a former officer and/or director of Multiflora, Christian Rasch owed continuing fiduciary duties and/or duties of confidence to protect and preserve confidential information received during his service as a director, which obligation continued even after Christian had been removed as a director of Multiflora.  This included the duty not to use the confidential information he knew about Multiflora and its assets/shareholdings to harm the company or to usurp Multiflora's corporate opportunities that the company had acquired during Christian's tenure as director.  In addition, Caban Systems's corporate officers and directors acting in the course and scope of their agency for the company — like Alexandra Rasch, Caban's CEO — owed fiduciary duties to the company's shareholders (including Plaintiff Multiflora) to comply with duties of care in all company business, duties to disclose potentially self-interested transactions involving a corporate director (like, e.g., a cancellation and/or transfer of an existing shareholder's issued shares to another entity partially owned by the corporate director and her family members), and duties of good faith and fair dealing.

46.     Christian Rasch breached his fiduciary duties owing to Multiflora when — after having his authority to act on behalf of the company revoked —  he nevertheless transferred, encumbered, hypothecated, assigned, and/or exercised dominion, custody or control of Multiflora's shares in Caban Systems and, without authority, transferred them, without consideration, to defendant Gaia Investment Holdings Corp, a company in which he held an ownership interest and that was run by his daughters, defendants Alexandra Rasch, Jacqueline Rasch and Nadine Rasch.  This transfer was made without the knowledge or consent of Multiflora's officers, its other directors, or any other persons with authority to act on the

company's behalf during this time. This action was also taken without considering the interests of Multiflora and without disclosing the conflicted nature of the transaction due to Christian's self-interest and his close familial relationship with his daughters, all of whom served as directors and/or officers of Gaia. Christian Rasch accomplished this result by using a fraudulent Aug. 28, 2020 Power of Attorney over Multiflora, which document has already been adjudicated as false, null, and void by the Eastern Caribbean Supreme Court, High Court of Justice.

47.     In addition to the foregoing, defendant Alexandra Rasch, CEO of Caban Systems, owed fiduciary duties to Plaintiff Multiflora, a shareholder of Caban Systems, including without limitation, duties of care, loyalty, and disclosure and, more generally, the duty to act with the utmost good faith in the best interests of the company. Defendant Ms. Rasch breached these fiduciary duties she owed to Caban's shareholder, Multiflora, by canceling the Caban shares that had been issued to Multiflora and re-issuing them to defendant Gaia, without any exchange of consideration for the transaction, and without disclosing the conflicted nature of the transaction with respect to both counterparties (i.e., her father being a former director of Multiflora, without authority to transact, and her role as President of Gaia, which was an entity in which she and her sisters held official roles). At all relevant times, Ms. Rasch did these acts with knowledge of her father's lack of authority and with knowledge of the commercial unreasonableness of the transaction from the perspective of Multiflora and knowing that it would not benefit the other shareholders of Multiflora who were not her father.

48.     As a direct and proximate result of these breaches of fiduciary duties owed to Plaintiff Multiflora by Defendants, Multiflora has suffered damages in an amount to be determined at trial but no less than Multiflora's interests in the Caban System shares at their highest value to date, plus interest (and including, if applicable, on an as-converted basis, assuming participation in Caban Systems's intervening Series B round of financing).

49.     Because Defendants' breaches of fiduciary duties were willful, malicious, and done with the deliberate intent to injure Multiflora, Multiflora is also entitled to punitive damages in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION
## AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY
### (*Against Defendants Gaia Investment Holdings, Jacqueline Rasch & Nadine Rasch*)

50.    Plaintiff re-alleges and incorporates by reference the allegations contained in this complaint as though fully set forth herein and incorporates them as though fully set forth herein.

51.    At all relevant times on or after May 18, 2020, upon information and belief, defendants Gaia Investment Holdings, Jacqueline Rasch, and Nadine Rasch all knew of the following facts: that (i) Christian Rasch (Jacqueline and Nadine's father) had been a director and shareholder in Multiflora but had been removed as a director of Multiflora, with no further authority to act on behalf of Multiflora, before the time the Share Purchase Agreement ("SPA") was executed; (ii) defendant Alexandra Rasch (Jacqueline and Nadine's sister) was the CEO and co-founder of defendant Caban Systems; and (iii) Multiflora was the owner of a substantial number of shares in Caban Systems.  These facts were also known to defendants Alexandra Rasch and her company, defendant Caban Systems.

52.    With this knowledge, defendants Alexandra Rasch, Caban Systems, Gaia Investment Holdings, Jacqueline Rasch, and Nadine Rasch all knew that Christian Rasch, as a director of Multiflora, continued to owe fiduciary duties to the company by virtue of his former position and knowledge of the company's assets, holdings, and other confidential information. They also knew that Caban Systems and its CEO Alexandra Rasch owed fiduciary duties to shareholders of Caban Systems, including Multiflora.

53.    Despite such knowledge, Defendants aided and abetted and assisted Christian Rasch and defendants Caban Systems and Alexandra Rasch to breach their respective fiduciary duties owed to Multiflora by, among other things, causing and participating in a scheme whereby Christian Rasch — without any authority to do so (and also using the fraudulent Aug. 28, 2020 Power of Attorney previously alleged) — would execute documents on behalf of Multiflora, which were then countersigned by the Defendants on behalf of either Caban Systems and/or Gaia Investment Holdings, as counterparties to these sham transactions.  The legal effect of this was to cause Multiflora's shares in Caban System to be canceled and/or transferred to Gaia Investment Holdings, without any exchange of consideration for the transaction.   These acts amounted to

breaches of the aforementioned fiduciary duties owed to Plaintiff Multiflora, and they orchestrated this transfer with actual knowledge that their father Christian had no further authority to act on behalf of Multiflora.

54. As a direct and proximate result of Defendants' aiding and abetting of the breaches of fiduciary duties referenced above, Multiflora has been harmed in an amount to be determined at trial. Moreover, because this harm to Multiflora was based upon a direct injury to Multiflora with respect to the loss of its shares and their transfer to Gaia, the harm alleged herein was a direct injury to Multiflora and borne solely by Multiflora; it was not a harm that affected all other shareholders in Caban Systems equally.

55. Because Defendants' aiding and abetting of these breaches of fiduciary duties was willful, malicious, and done with the deliberate intent to injure Plaintiff Multiflora, Multiflora is also entitled to punitive damages in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

### THIRD CAUSE OF ACTION
### CONVERSION
### (*Against All Defendants*)

56. Plaintiff re-alleges and incorporates by reference the allegations contained in this complaint as though fully set forth herein and incorporates them as though fully set forth herein.

57. Plaintiff Multiflora was the proper and rightful holder of 855,511 Shares of Series A Preferred Stock in Caban Systems.

58. Defendants have intentionally and substantially interfered with Plaintiff Multiflora's property by improperly transferring, encumbering, hypothecating, assigning, and/or exercising dominion, custody or control of the 855,511 Shares of Series A Preferred Stock purchased by Multiflora and causing their transfer to Defendant Gaia Investment Holdings Corp., which acted as an agent and co-conspirator of the other defendants named herein. This interference with Multiflora's rights of possession were performed without authorization by Multiflora and without the knowledge or consent of the persons authorized to act on behalf of the company at the time of the transfer of shares. Defendants Caban Systems, Alexandra Rasch, and

their agents and co-conspirators have refused to return the Caban Systems shares to Multiflora, even after Multiflora has demanded their return.

59. As a direct and proximate result of Defendants' wrongful conversion of Multiflora's shares in Caban Systems, Multiflora has suffered damages in an amount to be determined at trial but no less than highest value which the shares in Caban Systems have reached to date, plus interest (and including, if applicable, on an as-converted basis assuming participation in Caban Systems's intervening Series B round of financing).

60. Because Defendants knew that their conduct alleged herein would provide substantial assistance to accomplish the tortious result to deprive Plaintiff of its shares in Caban Systems, and each of the Defendants' own conduct, separately considered, constituted a breach of duty and/or a tortious act against Plaintiff. As a result, each of the Defendants are liable for aiding and abetting the conversion of Multiflora's shares.

61. Because Defendants' conversion of, and/or aiding and abetting the conversion of, Plaintiff's shares was willful, malicious, and done with the deliberate intent to injure Plaintiff, Plaintiff is entitled to punitive damages in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

## FOURTH CAUSE OF ACTION
### CIVIL CONSPIRACY
### (*Against All Defendants*)

62. Plaintiff re-alleges and incorporates by reference the allegations contained in this complaint as though fully set forth herein and incorporates them as though fully set forth herein.

63. Defendants conspired and agreed with Christian Rasch and with one another to engage in a series of transactions designed to misappropriate the shares in Caban Systems that had been purchased by Plaintiff Multiflora with the use of Multiflora's funds. The object of this conspiracy was to transfer ownership, custody and control of these shares to an entity controlled by, or affiliated with, Christian Rasch, which was ultimately defendant Gaia Investment Holdings, an entity that was controlled entirely by Christian's daughters. At all relevant times, Christian's daughter and Caban Systems' principal, defendant Alexandra Rasch, was the

President and Director of Gaia, and her sisters, defendants Jacqueline Rasch and Nadine Rasch were Gaia's Secretary and Treasurer, respectively.

64. Defendants intended to commit the wrongful acts described above and, in furtherance of their scheme, did commit the wrongful acts in furtherance with one another.

65. As a direct and proximate result of Defendants' conspiracy to misappropriate Plaintiff's shares in Caban Systems, Plaintiff has been damaged in an amount to be proven at trial, but that exceeds the Court's jurisdictional minimum.

WHEREFORE, Plaintiff prays for relief as set forth below.

## FIFTH CAUSE OF ACTION
### FRAUDULENT TRANSFER - ACTUAL INTENT
### (*Against All Defendants*)

66. Plaintiff re-alleges and incorporates by reference the allegations contained in this complaint as though fully set forth herein and incorporates them as though fully set forth herein.

67. Plaintiff is informed and believes, and on that basis alleges, that, following the ouster of Christian Rasch as a director of Multiflora, Defendants caused a transfer of Multiflora's property, its shares in Caban Systems, to Gaia Investment Holdings Co., a company affiliated with Christian Rasch and his daughters and operating as their alter ego, with the actual intent to hinder, delay, and defraud Plaintiff Multiflora.

68. Defendants accomplished this by orchestrating a scheme whereby they agreed to assist and/or provided substantial assistance to Christian Rasch to abscond with shares issued to Multiflora, without any exchange of consideration for the transfer, and with the intention of achieving that tortious result.

69. The transfer of Multiflora's shares in Caban Systems to Gaia Investment Holdings occurred at a time when Plaintiff was attempting to conduct an accounting of the company's financial condition, including its assets and liabilities.

70. Plaintiff is informed and believes, and on that basis alleges, that the transfer of shares from Multiflora to Gaia Investment Holdings was a transfer made with the intent to hinder, delay, or defraud Plaintiff Multiflora into its efforts to account for and collect amounts rightfully owed to it, to evaluate potential collections actions and other legal proceedings against

Christian Rasch and others to recover property belonging to Multiflora, and/or to prevent Multiflora from doing so.

71.     Plaintiff is informed and believes, and on that basis alleges, that Defendants caused the transfer of Multiflora's shares in Caban Systems to defendant Gaia Investment Holdings.   In so acting, Defendants were attempting to enrich themselves, particularly Christian Rasch, at Plaintiff's expense.  Defendants' conduct was a substantial factor in causing harm to Plaintiff as alleged herein.

72.     Plaintiff is informed and believes, and on that basis alleges, that each defendant directed, controlled or actively participated in, the fraudulent scheme with the intent to hinder, delay or defraud Plaintiff as alleged herein.

73.     Defendants were aware of each other's intention to hinder, delay and defraud Plaintiff in accounting for debts owed to the company by Christian Rasch and his prior acts of misappropriation and wrongful misconduct.  Upon information and belief, Defendants willingly conspired with and aided and abetted each other in hindering delaying and defrauding Plaintiff.

74.     With the intent to hinder, delay or defraud Plaintiff in recovering these funds owed to it, Defendants Gaia Investment Holdings, Alexandra Rasch, Jacqueline Rasch, and Nadine Rasch have retained possession or control of the property transferred due to the nature of the transfer and their common ownership in Gaia Holdings, the transferee of this actually fraudulent transfer.

75.     As a result of Defendants' conduct, Plaintiff has been damaged in an amount to be proven at trial but that exceeds the Court's jurisdictional minimum.  In addition, Plaintiff has been forced to incur costs and expense in seeking relief by this action.

WHEREFORE, Plaintiff prays for relief as set forth below.

### SIXTH CAUSE OF ACTION
### RESCISSION
### (*Against Defendant Gaia Investment Holdings and Caban Systems*)

76.     Plaintiff re-alleges and incorporates by reference the allegations contained in this complaint as though fully set forth herein and incorporates them as though fully set forth herein.

77. Prior to the transfer of Multiflora's shares in Caban Systems to defendant Gaia Investment Holdings but after the revocation of his authority to act on May 18, 2020, Christian Rasch — knowing that his authority to act for Multiflora had been revoked — falsely and fraudulently executed an invalid power of attorney on Aug. 28, 2020 and falsely and fraudulently represented to Caban Systems and other third parties that he had the authority to transfer Multiflora's assets out of the company. He also fraudulently executed a share purchase agreement to transfer Multiflora's shares in Caban Systems to defendant Gaia Investment Holdings. By this cause of action, Multiflora seeks to rescind these transactions because any consent it previously gave to the transaction was not freely given, and was instead obtained by the fraudulent scheme alleged herein and/or by mistake. But for that fraud and/or mistake, Multiflora would not have consented to the transaction.

78. Upon information and belief, the falsity and fraudulent nature of this conduct was either (a) known to defendants Alexandra Rasch and Jacqueline Rasch or (ii) they acted with reckless indifference to the truth of the representations, as the commercial unreasonableness of the transaction was known to them and readily apparent from the documents to be signed, which explicitly stated that the transfer of assets from Multiflora was occurring for no exchange of consideration. To effectuate this fraudulent scheme, Jacqueline knowingly signed the Share Purchase Agreement on behalf of Gaia and as an officer of Gaia, and Alexandra was the person who approved and/or ratified her father's misconduct by transmitting the Share Purchase Agreement for him to sign on behalf of Multiflora. Thereafter, Alexandra — in her capacity as an officer of Caban — took additional steps to effectuate the transfer of Multiflora's assets by canceling Multiflora's shares in Caban Systems and ordering their re-issuance in favor of Gaia Investment Holdings, an entity that she, with her sisters, controlled.

79. The fraudulent documents, statements, and representations, as communicated by Christian Rasch to defendants Alexandra Rasch, Gaia Investment Holdings, Caban Systems and even to Caban's attorneys at Cooley LLP, were false. The true facts were that Christian Rasch's authority to act on behalf of the company had been revoked and that he had no power or authority to transfer any company assets out of the company. These facts were also known to defendant Alexandra Rasch when she, acting in the course and scope of her authority for Caban

Systems, ordered the cancellation of Multiflora's shares and arranged for their reissuance to Gaia; in the alternative, to the extent these facts were not known to Alexandra, any mistake of fact she may have had about her father's authority to transact on behalf of Multiflora was unreasonable when there was no exchange of consideration for the transfer of assets out of Multiflora to a different entity, Gaia, which was under different control and ownership.

80.     When Christian Rasch prepared and/or signed these fraudulent documents like the Aug. 28, 2020 POA and the Multiflora-Gaia SPA, and also conveyed the representations described above, he knew them to be false, and made these documents and representations with the intent to defraud and deceive Caban Systems and/or its attorneys, and sought to induce them to enter into the share purchase agreement to transfer Multiflora's shares in Caban to defendant Gaia Investment Holdings, a company that was controlled by Christian's daughters, away from the competing claims of Multiflora and its other shareholders.  At this time, Defendants Alexandra Rasch and Jacqueline Rasch also took the actions pleaded above with knowledge of the falsity of their fathers' claimed authority and/or under circumstances for which any mistake of fact would have been unreasonable given the lack of any consideration being exchanged for the transfer of assets from Multiflora to Gaia.  In this regard, Defendants Gaia Investment Holdings, Alexandra Rasch, Jacqueline Rasch, Caban Systems and/or Caban's attorneys either (a) believed these representations and reasonably relied upon them or (b) knew they were false but acted anyway (with knowledge of certain harm to Multiflora) in entering into the Share Purchase Agreement.  Defendants would not have provided consent to the transfer of shares had it not been for the fraudulent misrepresentations of Christian Rasch and his fraudulent power of attorney.

81.     As a proximate result of the fraudulent acts and misconduct alleged herein, Plaintiff Multiflora's shares in Caban Systems were improperly transferred to Gaia Investment Holdings by documents signed by Christian Rasch at a time when his authority to act on behalf of Multiflora had been revoked.

82.     Plaintiff Multiflora seeks recission of the Share Purchase Agreement because they have no other adequate remedy at law.  If the SPA is not rescinded, Plaintiff will suffer

irreparable harm and injury by having been induced to transfer Multiflora's shares under false representations and without proper authority.

83.    Plaintiff intends for service of this complaint to serve as notice of their intent to rescind the SPA based on the fraud committed by Christian Rasch (and the taking, with knowledge and/or by mistake, of Multiflora's property by defendants Gaia Investment Holdings, Alexandra Rasch, and possibly others). Because Multiflora received no consideration in exchange for the transfer of its shares to Gaia Investment Holdings, Multiflora hereby demands the return of all consideration it — through its unauthorized agent Christian Rasch — conveyed to Gaia Investment Holdings to return to the status quo ante before the fraud perpetrated on Multiflora.

84.    In performing the acts herein alleged, Defendants intentionally misrepresented and/or concealed from (i) Plaintiff's authorized representatives and (ii) other third parties with the power to prevent the transfer, key material facts known to them about Christian Rasch's lack of authority to transfer company property, as alleged above, with the intention of depriving Plaintiff of its property, thereby justifying an award of punitive damages. In addition, Plaintiff seeks an award of reasonable attorneys' fees for needing to unwind the fraudulent SPA.

WHEREFORE, Plaintiff prays for relief as set forth below.

### SEVENTH CAUSE OF ACTION
### CLAIM AND DELIVERY/REPLEVIN
#### (*Against Gaia Investment Holdings and Caban Systems*)

85.    Plaintiff re-alleges and incorporates by reference the allegations contained in this complaint as though fully set forth herein and incorporates them as though fully set forth herein.

86.    As the owner of the property and materials described above, Plaintiff had the immediate and unconditional right to possess the shares of Caban Systems that it owned and that were taken from it without authorization.

87.    Starting on or about Aug. 31, 2020, one or more of defendants Gaia Investment Holdings and Caban Systems wrongfully took possession of the personal property described above. Since that time, Defendants have been in wrongful possession of the property in violation of Plaintiff's right to immediate and exclusive possession.

88.     As a direct and proximate result of Defendants' breach of fiduciary duty, Plaintiff has suffered and continues to suffer damages in an amount to be determined at trial and is also entitled to repossession of such materials.

WHEREFORE, Plaintiff prays for relief as set forth below.

**EIGHTH CAUSE OF ACTION**
**CONSTRUCTIVE TRUST**
(*Against All Defendants*)

89.     Plaintiff re-alleges and incorporates by reference the allegations contained in this complaint as though fully set forth herein and incorporates them as though fully set forth herein.

90.     Plaintiff alleges that Defendants engaged in the wrongful acts or omissions pleaded herein, including the breaches of fiduciary duty, conversion, and misappropriation of funds as set forth in this complaint, in bad faith, with the intent to convert shares in Caban Systems that were owned by defendant Multiflora.

91.     Defendants cannot benefit from their own wrongful acts that would unjustly enrich them by their fraud, mistake, undue influence, or any other wrongful act per, *inter alia*, California Civil Code §§ 2224 and 3517 and any other similar applicable law(s).

92.     To the extent that Defendants have gained, taken, or converted assets through their wrongful conduct pleaded herein, each of them is an involuntary trustee of the things they have gained, taken, or converted (and also such property that they will take) that otherwise would have been rightfully received by Plaintiff Multiflora.  Defendants are involuntary trustees of such property and have been, or would be, unjustly enriched by their improper receipt and possession of such property.  Plaintiff is entitled to an accounting of such property to prevent such unjust enrichment.

93.     Defendants are constructive trustees with a duty to transfer property they have improperly received back to Plaintiff Multiflora.  Plaintiff Multiflora has demanded and also again demands the return of such property and all related profit and benefits.  Plaintiff, as the beneficiary of the constructive trust, is entitled to all income and benefits of the property.

WHEREFORE, Plaintiff prays for relief as set forth below.

## NINTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH CONTRACT
### (*Against All Defendants*)

94.     Plaintiff re-alleges and incorporates by reference the allegations contained in this complaint as though fully set forth herein and incorporates them as though fully set forth herein.

95.     At all relevant times alleged herein, Multiflora had an existing business relationship with defendant Caban Systems as the owner and holder of 855,511 Shares of Series A Preferred Stock in Caban Systems.  Multiflora expected to obtain substantial economic benefit because of this ownership of shares.

96.     As alleged herein, Defendants — aware that Christian Rasch had been removed as a director of Multiflora — intentionally interfered with Multiflora's existing shareholder rights and right to profit from its ownership of shares in Caban Systems by (i) causing those shares to be canceled and/or transferred to Gaia Investment Holdings without proper authorization by those persons with legal authority to act on behalf of Multiflora and (ii) engaging in the scheme alleged herein for the purposes of causing and furthering their conspiracy to deprive Multiflora of the benefits of its investment in Caban Systems.

97.     As described above, each of the Defendants, by commission of the wrongful acts herein alleged, intentionally interfered with Plaintiff's business relationship with Caban Systems. At the time of these acts, Defendants knew that their actions would interfere with Multiflora's rights to own and accrue the benefits of its ownership stake in Caban Systems, and would result in significant financial harm to Multiflora, as there was no consideration being exchanged in the transaction.  In this regard, all defendants knew that this was an unjustified act of misappropriation as to Multiflora.

98.     Defendants were each aware of the other Defendants' wrongful conduct described herein and actively worked in concert with each other to carry it out.  The Defendants conspired with one another to design, effectuate, implement, cover up and/or profit from each others' wrongful conduct.  They also aided and abetted each other's wrongful conduct, which was known to them, and substantially assisted each other in carrying it out.  Accordingly, each of the Defendants as a primary actor, and/or as the agent, principal, aider and abettor and/or co-

conspirator of one or more of the other Defendants, is fully and jointly liable to Plaintiff

Multiflora for the wrongful conduct alleged herein based on theories of agency, conspiracy and

aiding and abetting.

WHEREFORE, Plaintiff prays for relief as set forth below.

## TENTH CAUSE OF ACTION
### DECLARATORY RELIEF
### (*Against All Defendants*)

99.     Plaintiff re-alleges and incorporates by reference the allegations contained in this

complaint as though fully set forth herein and incorporates them as though fully set forth herein.

100.     There is an actual controversy relating to the legal rights and duties between

Plaintiff and all Defendants with respect to Multiflora's 855,511 Shares of Series A Preferred

Stock in Caban Systems and an accounting of all proceeds from those shares.

101.     Specifically, Plaintiff Multiflora contends that it was the proper and rightful

holder of 855,511 Shares of Series A Preferred Stock in Caban Systems, and that those shares

were improperly canceled and/or transferred, without any exchange of consideration, to

defendant Gaia Investment Holdings, which was owned by several individuals, including

Christian Rasch's daughters, defendants Alexandra Rasch (Caban's CEO), Jacqueline Rasch, and

Nadine Rasch.  Upon information and belief, this cancellation and/or transfer of Multiflora's

shares in Caban Systems caused Multiflora damages and also prevented it from benefitting from

a later Series B financing round for Caban Systems in 2023.

102.     This controversy is present, existing and continuing and is the proper subject for

declaratory relief.

103.     Multiflora is entitled to a judicial determination of the parties' rights and interests

and a declaration that: (i) Prior to the cancellation and/or transfer of Multiflora's shares to Gaia

Investment Holdings, Multiflora was the holder of 855,511 Shares of Series A Preferred Stock in

Caban Systems; (ii) any cancellation, transfer, or other action taken by Christian Rasch was done

without authorization and was therefore void and invalid; and (iii) Defendants must compensate

Multiflora for the unauthorized cancellation and/or transfer of these shares, in addition to the

reconveyance of all proceeds that Defendants have improperly obtained through the use, possession, or sale of Multiflora's shares.

WHEREFORE, Plaintiff prays for relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment against Defendants as follows:

1. For compensatory, special, incidental and consequential damages according to proof;

2. For rescission, restitution, disgorgement, and/or other equitable relief according to proof and as the Court deems proper, including the return Multiflora's shares in Caban Systems and disgorgement of all income and profits derived therefrom.

3. For the declaratory relief requested herein, including a declaration that establishes, among other things, the following:

a. prior to the cancellation and/or transfer of Multiflora's shares to Gaia Investment Holdings, Multiflora was the holder of 855,511 Shares of Series A Preferred Stock in Caban Systems;

b. any cancellation, transfer, or other action taken by Christian Rasch was done without authorization and was therefore void and invalid; and

c. Defendants must compensate Multiflora for the unauthorized cancellation and/or transfer of these shares, in addition to the reconveyance of all proceeds that Defendants have improperly obtained through the use, possession, or sale of Multiflora's shares;

4. For exemplary or punitive damages in an amount to be proven at trial;

5. For prejudgment interest as permitted by law;

6. For cost of suit, including attorneys' fees permitted by operation of law; and

7. For such further and other relief that the Court deems just and proper.

Respectfully submitted,

Dated: Oct. 7, 2024                 MOYA LAW FIRM

                                    */s/ Mario A. Moya*
                                    _____
                                    Mario A. Moya
                                    Rebecca M. Hoberg

                                    Attorneys for Plaintiff
                                    MULTIFLORA INTERNATIONAL LTD.


## JURY DEMAND

Plaintiff demands a trial by jury on all triable issues.


Dated: Oct. 7, 2024                 Respectfully submitted,

                                    MOYA LAW FIRM

                                    */s/ Mario A. Moya*
                                    _____
                                    Mario A. Moya
                                    Rebecca M. Hoberg

                                    Attorneys for Plaintiff
                                    MULTIFLORA INTERNATIONAL LTD.