MARIO A. MOYA (State Bar No. 262059)
REBECCA M. HOBERG (State Bar No. 224086)
MOYA LAW FIRM
1300 Clay Street, Suite 600
Oakland, California 94612
Tel:  510.926.6521
Fax: 510.340.9055
Email: mmoya@moyalawfirm.com
        rhoberg@moyalawfirm.com

Attorneys for Plaintiff
MULTIFLORA INTERNATIONAL LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MULTIFLORA INTERNATIONAL LTD., a British Virgin Islands company limited by shares,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CABAN SYSTEMS, INC., a Delaware corporation; GAIA INVESTMENT HOLDINGS CORP., a Panamanian corporation; ALEXANDRA RASCH, an individual; JACQUELINE RASCH, an individual; NADINE RASCH, an individual; CHRISTIAN RASCH, an individual; and DOES 1–20, inclusive,<br><br>　　　　　Defendants. | Case No. 4:24-cv-04455-YGR<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FILED BY DEFENDANTS CABAN SYSTEMS AND ALEXANDRA RASCH**<br><br>Date: October 28, 2025<br>Time: 2:00 pm<br>Courtroom 1<br>Judge:  Hon. Yvonne Gonzalez-Rogers<br><br><br>Complaint Filed: 07/23/2024<br>FAC Filed: 10/07/2024<br>SAC Filed: 09/02/2025 |

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION....................................................................................................................1

II. BACKGROUND..................................................................................................................1

III. ARGUMENT......................................................................................................................1

    A. Standard of Review.........................................................................................................1

    B. The SAC Adequately Pleads That Alexandra, Caban's CEO, Breached Fiduciary Duties Owed to Multiflora For Direct Harms That Are Not Derivative In Nature.................2

        1. Delaware Law Is Clear That Transactions Involving Family Members of Directors and Officers Qualify as Self-Interested Transactions....................................................3

        2. The Motion Focuses on Duty of Loyalty to the Exclusion of All Others Pleaded, and Partial Dismissal is Not Permitted..............................................................................4

        3. The Harm Pleaded By Multiflora Is Direct, Not Derivative........................................7

        4. Alexandra's Bold Admission That She Participated In a Transaction "That [Has] Nothing to Do With the Business of The Corporation" Does Not Exculpate Her From Liability, Especially For an Ultra Vires Act...................................................................8

    C. The SAC Adequately Pleads a Claim for Replevin Against Caban, Which Caban Also Waived by Not Raising During Its First Challenge...............................................................8

    D. If Court Finds Concern With Any Claim, It Should Grant Leave To Amend.................9

IV. CONCLUSION...................................................................................................................9

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ……...............................................................................................1

*ATR-Kim Eng Fin. Corp. v. Araneta,*
    2006 Del. Ch. LEXIS 215 (Del. Ch. Dec. 21, 2006)..................................................5

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ..................................................................................................1

*Berry v. Bank of Bakersfield,*
    177 Cal. 206, 209 (1918)...........................................................................................9

*Braden v. Wal-Mart Stores, Inc.,*
    588 F.3d 585 (8th Cir. 2009) ..................................................................................1,2

*Cepelak v. HP Inc.,*
    2021 U.S. Dist. LEXIS 221360 (N.D. Cal. Nov. 15, 2021) ……...............................2

*CertiSign Holding, Inc. v. Kulikovsky,*
    2018 Del. Ch. LEXIS 185, at *38 (Del. Ch. June 7, 2018)......................................6

*Doe v. Napa Valley Unified Sch. Dist.,*
    2018 U.S. Dist. LEXIS 238175 (N.D. Cal. Apr. 24, 2018)......................................2

*eBay Domestic Hldgs., Inc. v. Newmark,*
    16 A.3d 1, 46 (Del. Ch. 2010)...............................................................................5–6

*El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff,*
    152 A.3d 1248 (Del. 2016).......................................................................................6

*Fed. Trade Comm'n v. Amazon.com, Inc.,*
    735 F. Supp. 3d 1297 (W.D. Wash. 2024)..............................................................4

*Foster v. Sexton,*
    61 Cal. App. 5th 998 (2021).....................................................................................9

*García-Catalán v. United States,*
    734 F.3d 100 (1st Cir. 2013).....................................................................................2

*Haro v. Ibarra*
    180 Cal.App.4th 823 (2009) .....................................................................................9

*Jones v. Kirchner,*
    835 F.3d 74 (D.C. Cir. 2016)....................................................................................2

PL'S OPPOSITION TO MOT. TO DISMISS SAC FILED BY DEFS. CABAN & A. RASCH

*Lorenz v. Safeway, Inc.*,
    241 F. Supp. 3d 1005 N.D. Cal. 2017 ..................................................................................1

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000)...........................................................................................10

*MBKS Co. v. Reddy*,
    924 A.2d 965  (Del. Ch. 2007)............................................................................................5

*Morongo Band of Mission Indians v. Rose*,
    893 F.2d 1074 (9th Cir 1990)...........................................................................................10

*NRA of Am. v. Vullo*,
    602 U.S. 175 (2024)............................................................................................................2

*Rollins v. Dignity Health*,
    338 F. Supp. 3d 1025 (N.D. Cal. 2018)..............................................................................2

*Schnabel v. Lui*,
    302 F.3d 1023 (9th Cir. 2002)............................................................................................2

*Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*,
    845 A.2d 1031, 1033 (Del. 2004)......................................................................................6

**Statutes**

8 Del. Code § 144(a)...........................................................................................................3

8 Del. Code § 152…............................................................................................................5

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................................ *passim*

**Treatises**

5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 693.........................................................9

## I.      INTRODUCTION

The Court should deny the consolidated motion to dismiss filed by defendants Alexandra Rasch and Caban Systems as to Plaintiff Multiflora International Ltd.'s Second Amended Complaint. Alexandra's challenge to Multiflora's augmented claim for breach of fiduciary duty fails for several reasons.  Contrary to what she argues, the transactions at issue — in which she herself canceled Multiflora's shareholdings and re-issued them to Gaia, an entity in which she and her sisters were officers and/or directors — are easily-recognized as self-interested transactions under Delaware law and fall within the scope of Section 144(a) of the Delaware General Corporation Law.  Her challenge is also myopic.  It ignores other breaches of duty that have been pleaded in the SAC, and it also fails to recognize that the only harm pleaded by Multiflora is a direct injury to it, not to any other shareholder.

Caban's challenge to Plaintiff's claim for replevin also fails.  The revised pleadings to the replevin claim make clear that the cause of action is possessory in nature and provides for different measures of damages than conversion in the event that repossession is no longer practicable.

## II.     BACKGROUND

The SAC provides a detailed recitation of the facts, which have recounted in considerable detail in the Court's prior order granting, in part, and denying, in part, several motions to dismiss the prior pleading.  See ECF 65.  In brief: Plaintiff Multiflora brings this action to seek redress for the theft, concealment, and fraudulent transfer of 855,511 shares of Series A preferred stock it owned in defendant Caban Systems, Inc., a renewable energy company, whose CEO is defendant Alexandra Rasch.  These shares were purchased via a $250,000 cash outflow from Multiflora in April 2018 that was known to defendant Christian Rasch, a former Multiflora director, but not to his brothers and co-owners/co-directors.   For the sake of brevity and in light of the Court's lengthy prior order (*see* ECF 65), relevant portions of the SAC are cited herein as applicable.

## III.    ARGUMENT

### A.      **Standard of Review.**

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Plausibility "is not akin to a 'probability requirement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "When there are well-pleaded factual allegations, a court

should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 664.  Pleadings should not be found deficient even when "a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

A plaintiff need not "rule out every possible lawful explanation for the conduct . . . challenge[d]," and a rule to the contrary "would invert the principle that the complaint is construed most favorably to the nonmoving party" on a motion to dismiss." *Lorenz v. Safeway, Inc.*, 241 F. Supp. 3d 1005, 1020 (N.D. Cal. 2017) (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597 (8th Cir. 2009)), *overruled in part on grounds not applicable, Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1032 n.1 (N.D. Cal. 2018).  "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594; *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013).  Claims may be adequately pleaded when "the complaint, assessed as a whole," "plausibly allege[s] conduct that, viewed in context, could be reasonably understood to [constitute a cause of action]." *NRA of Am. v. Vullo*, 602 U.S. 175, 191-198 (2024) (reversing court of appeals's order of dismissal for failure to state claim where plaintiff's complaint plausibly alleged state regulatory agency violated First Amendment by coercing regulated entities to end business relationships with plaintiff in order to punish or suppress advocacy) (emphasis added). "Credibility determinations are not for the district court, especially at the motion to dismiss stage, before evidence is available and before the Defendants have even denied the allegations against them." *Jones v. Kirchner*, 835 F.3d 74, 80 (D.C. Cir. 2016).

A motion brought under Rule 12(b)(6) cannot be used to dismiss only "part" of a cause of action. *See Doe v. Napa Valley Unified Sch. Dist.*, No. 17-cv-03753-SK, 2018 U.S. Dist. LEXIS 238175, at *8 (N.D. Cal. Apr. 24, 2018).  With limited exception, "a party that makes a motion under [Rule 12(b)(6)] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2); *Schnabel v. Lui*, 302 F.3d 1023, 1034 (9th Cir. 2002). A party's failure to raise such defenses or objections in an earlier motion to dismiss is a forfeiture. *See Cepelak v. HP Inc.*, 2021 U.S. Dist. LEXIS 221360, at *2 (N.D. Cal. Nov. 15, 2021).

**B.**  **The SAC Adequately Pleads That Alexandra, Caban's CEO, Breached Fiduciary Duties Owed to Multiflora For Direct Harms That Are Not Derivative In Nature.**

In this latest round of motion practice, Alexandra swings for the fences to challenge Multiflora's considerable amendments that demonstrate, in detail and in concurrence with applicable caselaw, just

---

*Multiflora Int'l Ltd. v. Caban Systems et al.*
No. 4:24-cv-04455-YGR

how she breached several fiduciary duties that she owed to Multiflora in her capacity as Caban's CEO. *See* Mot. at 3-6.  Her challenge fails for several reasons.

### 1. Delaware Law Is Clear That Transactions Involving Family Members of Directors and Officers Qualify as Self-Interested Transactions.

To try to score a cheap point, Alexandra's motion flatly misstates and mis-quotes Section 144(a) of the Delaware General Corporation Law ("DGCL").  *See* Mot. at 4:24-5:7 (arguing that the cancellation and transfer of Multiflora's shares was not a "self-interested transaction" because the transaction was not "*between* a corporation and 1 or more of its directors or officers") (emphasis added). Her analysis is incorrect because section 144(a) of the DGCL is far broader than what she claims.  The statute extends to "act[s] or transaction[s] involving or between a corporation" and one or more corporate officers or directors (or their affiliated entities):

> (a) Except for a controlling stockholder transaction under subsection (b) or (c) of this section, an act or transaction *involving or* between a corporation, or 1 or more of the corporation's subsidiaries, on the 1 hand, and 1 or more of the corporation's directors or officers, on the other hand, or involving or between a corporation or 1 or more of the corporation's subsidiaries, on the 1 hand, and any other corporation, partnership (general or limited), limited liability company, statutory trust, association, or any other entity or organization in which 1 or more of its directors or officers are directors, stockholders, partners, managers, members, or officers, or have a financial interest, on the other hand, [is entitled to a statutory safe harbor from litigation if certain conditions of subsections (1) through (3) are met].

8 Del. Code § 144(a) (emphasis added).  The statue's use of the twin disjunctive phrases "act or transaction" and "involving or between" a corporation, must be read together to give effect to all such terms and their permutations.  In this regard, an "act . . . involving a corporation" may qualify as a self-interested transaction under Delaware law just as much as a "transaction . . . between a corporation" if all other requirements are shown — i.e., that one or more of the company's directors or officers (or their affiliated entities) are on the other side of the pertinent "act" or "transaction."

With respect to Defendants' heist of Multiflora's shareholdings, all of these statutory requirements are met and show that Alexandra, as CEO of Caban and orchestrating the company's internal and external machinery (whether by its attorneys at Cooley or by using its online shareholdings platform, Carta)  engaged in a self-interested transaction by cancelling Multiflora's shareholdings (an "act" "involving" Caban) and re-issuing them to Gaia, a Panamanian entity in which she, Alexandra, was an officer and director.   Her motion makes much of the fact that the Stock Transfer Agreement

underlying the transfer — which contemplated a transfer for no consideration whatsoever — was a transaction between only Multiflora and Gaia. But that does not matter. Her "acts" involved Caban and the transaction "*involved*" Caban, "on the one hand," while her entity, Gaia, stood on the other side of the transaction. Likewise, the same is true with respect to her efforts to cancel Multiflora's shares at her father's behest. Putting aside when her father was ousted and when Alexandra knew of his troubles within Multiflora, the unavoidable fact is that her "acts" in cancelling the company's shares "involved" Caban, "on the one hand," while her father stood at the other end (even if without authorization) on behalf of Multiflora. No matter how the series of transactions are viewed, at all relevant times, Alexandra was engaging in self-interested transactions as defined by section 144(a) of the DGCL, whether by her cancellation of Multiflora's shares or by their reissuance to Gaia.

### 2. The Motion Focuses on Duty of Loyalty to the Exclusion of All Others Pleaded, and Partial Dismissal is Not Permitted.

Alexandra's motion (at pp. 3-6) focuses primarily on her duty of loyalty to the exclusion of the other fiduciary duties that Multiflora alleges that she breached — i.e., duties of care, disclosure and good faith. In essence, she misconstrues the complaint in a manner that avoids pleaded issues and tries to secure a partial dismissal on a narrow theory of challenged claim. *Fed. Trade Comm'n v. Amazon.com, Inc.*, 735 F. Supp. 3d 1297, 1312 (W.D. Wash. 2024) ("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims").

Paragraph 45 of the SAC pertains to breaches of fiduciary duties committed by Alexandra's father, Christian Rasch (which Alexandra also aided and abetted), while paragraph 46 alleges that Alexandra herself "owed fiduciary duties to Plaintiff Multiflora, a shareholder of Caban Systems, including without limitation, duties of care, loyalty, and disclosure and, more generally, the duty to act with the utmost good faith in the best interests of Caban Systems and toward its shareholders." SAC 46. Among other things, Paragraph 47 also alleges that Alexandra "breached these fiduciary duties . . . by either transferring or canceling Multiflora's shares in Caban System that had been issued to Multiflora and re-issuing them to defendant Gaia, without any exchange of consideration for the transaction, and, upon information and belief, without disclosing the conflicted nature of such transaction(s) with respect to both counterparties (i.e., her father being a former director of Multiflora, without authority to transact, and her role as President of Gaia, which was an entity in which she and her

sisters held official roles and that, upon information and belief, was hastily incorporated as an entity to receive property that their father Christian had misappropriated from Multiflora)." *Id*. ¶ 47.  Separately, paragraph 48 alleges that she also breached her disclosure obligations concerning the transaction and also alleges that she "further orchestrated the transfer by communicating with her father directly about the transaction to obtain his improper signature on behalf of Multiflora so that Gaia could receive and fence the misappropriated shares. Not only was this a breach of her duties of disclosure to the company and also to Multiflora, which was Caban's uniquely affected shareholder, it also was not a fair transaction to Caban Systems or to Multiflora, especially when there was no consideration exchanged for such transfer by the express terms of the Share Transfer Agreement." *Id*. ¶ 48.  Finally, paragraph 49 states that, "[a]t all relevant times, [Alexandra] did these acts with knowledge of her father's lack of authority and with knowledge of the commercial unreasonableness of the transaction from the perspective of Multiflora and knowing that (i) it would not benefit the other shareholders of Multiflora who were not her father; (ii) would instead benefit her, her father, and her sisters uniquely in a manner not shared by all Caban System shareholders equally; and (iii) would also needlessly expose Caban Systems to liability for the sake of receiving property that would be misappropriated from Multiflora. By intentionally acting with a purpose other than that of advancing the best interests of Caban Systems and also its uniquely-harmed shareholder, Multiflora, defendant Alexandra Rasch breached her fiduciary duties." *Id*.    49.   These averments are considerably broader than what little had been pleaded in the First Amended Complaint.  *Compare* SAC ¶¶ 43-51 *with* FAC ¶¶ 44-49.

All of these averments of the SAC and the various breaches of fiduciary duties they plead are considerably broader than Alexandra's myopic focus on the duty of loyalty, and they are more than sufficient to establish her liability under Delaware law.  For instance, only the Board of Directors of a Delaware corporation can issue, cancel, repurchase, or otherwise deal in a corporation's shares.  See 8 Del. Code § 152.  A director or officer's unilateral act of "cancelling" a stockholder's shares and "transferring" them to someone else without formal board action exceeds a director's authority as a matter of law and gives rise to fiduciary liability.   A director who cancels or transfers a stockholder's shares without proper board approval is acting outside their power, and such conduct is sufficient to show conversion and breaches of fiduciary duties, including the duty of loyalty.   *See MBKS Co. v. Reddy*, 924 A.2d 965,  (Del. Ch. 2007) (shareholders were entitled to summary judgment where it was shown that a sole director's action to cancel the common stock owned by two corporate entities and

---

reissuing a majority of their stock to himself was deemed invalid and ineffective where no amendments to the certificates of incorporation were made and no consideration was paid for the issued stock), *aff'd*, 945 A.2d 1080 (Del. 2008).

Likewise, engaging in a transaction that is intended to further one's personal or familial interests that does not meet other statutory requirements like the entire fairness test will establish a breach of a duty of loyalty. *See ATR-Kim Eng Fin. Corp. v. Araneta*, No. 489-N, 2006 Del. Ch. LEXIS 215, at *57 (Del. Ch. Dec. 21, 2006) (finding breach of duty of loyalty by "director [Araneta] who conceived of and carried out the transfer of the LBC Operating Companies from the Delaware Holding Company to members of his family for no value" and who unsuccessfully "bore the burden of establishing the fairness of this transaction"); *see also*, *eBay Domestic Hldgs., Inc. v. Newmark*, 16 A.3d 1, 46 (Del. Ch. 2010) (directors "breached their fiduciary duty of loyalty by using their power as directors and controlling stockholders to implement an interested transaction" of new share issuance  that did not "bear[] some reasonably necessary relation to the corporation's best interest" but rather was undertaken "to protect [the directors'] personal, sentimental interests . . . ."); *CertiSign Holding, Inc. v. Kulikovsky*, No. 12055-VCS, 2018 Del. Ch. LEXIS 185, at *38 (Del. Ch. June 7, 2018) ("Kulikovsky was well aware that his refusal to sign the Self-Help documents perpetuated the defective constitution of the CertiSign board . . . . By his defiance, Kulikovsky . . . jeopardized CertiSign's existence and operations in order to obtain leverage to advance his personal interests. This is the quintessential breach of the duty of loyalty.").

The other breaches of fiduciary duty are also well pleaded.  As to Alexandra's duties of disclosure, the SAC alleges that Alexandra breached those duties too by not informing Multiflora, Caban's Board, or Caban's counsel at Cooley of the self-interested nature of the series of transactions cancelling Multiflora's shares (with her father as signatory on behalf of Multiflora and also claiming a personal interest in those shares) and also reissuing those shares to Gaia, a company in which she and her sisters were senior officers.  This is sufficient to establish a breach of her obligation to disclose these transactions to the Board and also to Multiflora.  *See, e.g., Zirn v. VLI Corp.*, 621 A.2d 773, 783 (Del 1993) (directors' failure to disclose to shareholders the true basis for the directors' approval of an acquisition transaction — i.e., a lapse of a key patent as opposed to market conditions — the Delaware Supreme Court treated the asserted misconduct as a breach of the directors' duty of disclosure).

Finally, Alexandra's simplistic argument that she "is not her father" (at Mot. pp. 4:10-15) is a red herring. It adds nothing, especially when a transaction involving her father can easily be shown to be a self-interested transaction under the clear statutory text of Section 144(a) and other applicable case law. The same is true of the other similar arguments advanced elsewhere in the motion. Alexandra offers no authority for the proposition that there cannot be any liability against her for breach of loyalty for a transaction between Multiflora and Gaia. The argument strains credibility when the underlying transaction involved shareholdings of Caban that she herself cancelled and reissued pursuant to a written Stock Transfer Agreement that disclosed no consideration for such a transfer. For reasons previously explained, whoever the parties, these series of transactions still fall within the text and scope of section 144(a) and establish a breach of loyalty for "acts" she committed "involving" Caban, on the one hand, and her family members (her father in Multiflora and herself and her sisters in Gaia), on the other.

The claim is well pleaded, and Alexandra's motion to dismiss should be denied.

### 3.    The Harm Pleaded By Multiflora Is Direct, Not Derivative.

Wholly ignoring her and the other defendants' theft of Multiflora's shareholdings in Caban — which only affected the shareholdings of Multiflora and no other shareholder — Alexandra tries to argue that a claim for breach of fiduciary duty by Multiflora cannot be shown because the harms alleged are "derivative" in nature, not direct. *See* Mot. at 5:16-24. She is incorrect.

Under Delaware law, "whether a claim is solely derivative or may continue as a dual-natured claim 'must turn *solely* on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?'" *El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.3d 1248, 1260 (Del. 2016) (quoting *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004)). "In addition, to prove that a claim is direct, a plaintiff 'must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation.'" *Brinckerhoff*, 152 A.3d at 1260 (quoting *Tooley*, 845 A.2d at 1039).

Here, all of these requirements are met and show that the injuries and harms pleaded by Multiflora are direct harms, not derivative. Only Multiflora, and not any other shareholder, suffered harm to its interests by the theft of its shareholdings. Any recovery or other remedy on its claim would

only benefit Multiflora; no benefit or recovery on the claim pleaded would flow to Caban.  Finally, on the facts pleaded, there is no need for Plaintiff Multiflora to show an injury to Caban; all it needs to show is that there was a breach of duty owed to it when its shares were wrongfully taken by cancellation and reissuance to Gaia.  The proper remedy is conveyance to Multiflora, and there is no need to show any harm to Caban.

### 4.     Alexandra's Bold Admissions Do Not Exculpate Her From Liability, Especially For What She Claims is an Ultra Vires Act.

It is unclear for what purpose Alexandra argues, with considerable impunity, that she cannot be held to account to individual stockholders for her actions that "have nothing to do with the business of the corporation [Caban]."  *See* Mot. at 4:16-25.  She cites no authority for the proposition that she cannot be held to account for such harms.  It is axiomatic that all persons can be found liable in tort for harms caused to another, and there is no question that corporate fiduciary duties are owed by officers and directors to company shareholders.  If Alexandra may be suggesting that her own conduct was *ultra vires* in excess of the corporate charter, then she should be mindful of what implications that may have on her insurance, exculpation, and personal liability; such arguments are sure to be the subject of future briefing in this case and future proceedings.

### C.     The SAC Adequately Pleads a Claim for Replevin Against Caban, Which Caban Also Waived by Not Raising During Its First Challenge.

In an attempt to brush-away curative amendments to Plaintiff's claim for replevin, defendant Caban suggests that the amendments made are just a "jumble of words."  Mot. at 1:19-20.  That is not a fair reading of the SAC, and it does not provide a meaningful analysis of the issues.

The Court's prior order granted leave for Plaintiff to amend its claim for replevin/ claim-and-delivery to affirmatively plead how the claim stands apart and distinct from the pleaded claim for conversion.  See ECF 65 (Order re FAC) at pp. 26 n.9 & 33 (citing, *inter alia*, *Foster v. Sexton*, 61 Cal. App. 5th 998 (2021)).   Plaintiffs' amended pleadings (at SAC ¶¶ 88-90) readily satisfy this standard and provide the elaboration it requested.

The distinction between replevin and conversion is black-letter law.  The former cause of action, replevin, "is the equivalent of the 'action … for the recovery of specific personal property' referred to in [California] Code of Civil Procedure section 667."  *Foster v. Sexton*, 61 Cal. App. 5th 998, 1020 (2021) (citing *Berry v. Bank of Bakersfield*, 177 Cal. 206, 209 (1918).  "In actions for specific recovery, whether

---

PL'S OPPOSITION TO MOT. TO DISMISS SAC FILED BY DEFS. CABAN & A. RASCH

in the nature of replevin or detinue, if the property cannot be recovered, judgment may be given for its value, *and it is customary to pray for that alternative relief*." *Foster*, 61 Cal. App. 5th at 1020 (quoting 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 693, p. 111) (emphasis added).

Depending on the manner in which the causes of action have been pleaded, they may have differences in the remedies available at trial, which occurs *after* a plaintiff has learned through discovery which election of remedies is most favorable.   In California, "[t]he elements of a conversion action are " 'the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages. It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use.'" *Haro v. Ibarra*, 180 Cal.App.4th 823, 835 (2009) (citing *Shopoff & Cavallo LLP v. Hyon*, 167 Cal.App.4th 1489, 1507 (2008)).  In California, special damages may be awarded in an action for claim-and-delivery/replevin based on the loss of use of the property and its wrongful detention, see McNulty v. Copp, 125 Cal. App. 2d 697 (1954), which may be of considerable value to Plaintiffs here, where there has been intervening conversions of the shares originally taken by Defendants.

### D.    If Court Finds Concern With Any Claim, It Should Grant Leave To Amend.

Dismissal with leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), and this policy is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).   If the Court were to find any deficiency in Plaintiff's pleadings, Plaintiff respectfully requests leave to amend.

### IV.    CONCLUSION

The Court should deny Defendant's motion.

Respectfully submitted,

Dated: Sept. 30, 2025             MOYA LAW FIRM


*/s/ Mario A. Moya*
_____
Mario A. Moya
Rebecca M. Hoberg

Attorneys for Plaintiff